# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAMON EARL HOUSTON,

        Defendant-Appellant.

UNPUBLISHED
July 24, 2018

No. 334744
Wayne Circuit Court
LC No. 15-005480-01-FC

Before: CAMERON, P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM.

Defendant, Damon Earl Houston, appeals as of right his jury convictions of assault with intent to commit murder, MCL 750.83, carrying a weapon with unlawful intent, MCL 750.226, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Houston to prison terms of 20 to 33 years for the assault conviction and three to five years for the carrying a weapon with unlawful intent conviction, to be served concurrently but consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

Houston's convictions arose from the April 27, 2015, shooting assault of Demetris Shaffer in Detroit. Shaffer drove to a Detroit store late at night. After leaving the store, while walking to his car, he was shot from behind. After Shaffer fell down, he saw Houston standing over him, continuing to fire additional shots at him. Shaffer recognized Houston because the two had a past disagreement and physical altercation. Recordings from the store's surveillance system showed Houston inside the store shortly before the shooting and then outside appearing to wait in front of the store until Shaffer left. Shaffer received multiple gunshot wounds that left him paralyzed below the waist. The defense challenged Shaffer's identity of Houston as the shooter and argued that the shooter lacked the intent to commit murder because the gunshot wounds were only to Shaffer's lower torso and were not life-threatening.

## I. SUFFICIENCY OF THE EVIDENCE

Houston first challenges the sufficiency of the evidence to support his conviction of assault with intent to commit murder. Houston argues that the evidence was insufficient to show that he shot Shaffer with intent to kill because Shaffer survived the shooting and his gunshot wounds were concentrated on his lower body. We disagree. In reviewing a challenge to the sufficiency of the evidence to sustain a conviction, we must view the evidence in a light most

-1-

favorable to the prosecution to determine if there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Any conflicts in the evidence must be resolved in favor of the prosecution. *Jackson*, 292 Mich App at 587-588.

The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Barclay*, 208 Mich App 670, 674; 528 NW2d 842 (1995). "The intent to kill may be proven by inference from any facts in evidence." *Id*. The evidence showed that Houston committed an ambush-style assault, attacking Shaffer after he left the store by shooting him multiple times with a gun. After Shaffer fell to the ground from being shot, Houston stood over him and shot him again. These circumstances were sufficient to enable the jury to find beyond a reasonable doubt that Houston assaulted Shaffer with intent to kill. Although Houston asserts that all of the gunshot wounds were to Shaffer's lower body, Shaffer testified that he received at least one gunshot wound to his upper back. In addition, the use of a handgun to shoot a victim is consistent with intent to kill. *People v Henderson*, 306 Mich App 1, 11-12; 854 NW2d 234 (2014). Therefore, the fact that Shaffer was not shot in his chest or head did not preclude the jury from finding that Houston's use of a handgun to shoot Shaffer multiple times was sufficient proof of intent to kill. In short, sufficient evidence supported Houston's conviction of assault with intent to commit murder.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Houston argues that trial counsel was ineffective for not pursuing an alibi defense at trial. The trial court rejected this claim of error after conducting a postjudgment evidentiary hearing on Houston's ineffective assistance of counsel claims. Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review the trial court's factual findings for clear error. *Id*. Whether the facts as found by the trial court establish a violation of the defendant's right to the effective assistance of counsel is a question of constitutional law reviewed de novo. *Id*.

To establish ineffective assistance of counsel, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

A defendant is entitled to have his counsel "prepare, investigate, and present all substantial defenses." *People v Lloyd*, 459 Mich 433, 452; 590 NW2d 738 (1999). When a defendant claims that counsel was ineffective for failing to raise a defense, the defendant "must show that he made a good-faith effort to avail himself of this right and that the defense of which he was deprived was substantial. A substantial defense is one that might have made a difference

in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990) (citations omitted). This Court "will not substitute its judgment for that of trial counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

At the postjudgment evidentiary hearing, the trial court heard testimony from Houston and his family members who all testified that Houston was at home at the time of the shooting. The trial court also heard from Houston's trial attorney, who testified that he was aware of Houston's desire to present an alibi defense but that Houston admitted to him that he was the shooter. Counsel explained that he did not pursue an alibi defense because it would have required him to suborn perjury. The trial court found that defense counsel's reasons for not pursuing an alibi defense were credible and that the witnesses who testified in support of an alibi defense were not credible.

A defendant's right to the effective assistance of counsel does not require counsel to aid in perjury, and "an attorney's refusal to knowingly assist in the presentation of perjured testimony is not only consistent with his ethical obligations, but cannot be the basis of a claim of ineffective assistance of counsel." *People v Toma*, 462 Mich 281, 303 n 16; 613 NW2d 694 (2000). Giving deference to the trial court's findings regarding the credibility of the witnesses who appeared at the evidentiary hearing, MCR 2.613(C), we reject Houston's claim that trial counsel performed deficiently by not pursuing an alibi defense. In light of trial counsel's testimony that Houston admitted to him that he was the shooter, which the trial court found to be credible, defense counsel was ethically prohibited from calling witnesses in support of an alibi defense that counsel knew was false. Although counsel did not present an alibi defense, counsel still challenged the adequacy of the identification testimony in the context of arguing that the prosecution had not proven Houston's identification as the shooter beyond a reasonable doubt. Trial counsel also challenged the shooter's intent, arguing that the evidence did not show that the shooter acted with intent to kill. These strategies were reasonable given Houston's admission to counsel that he was the shooter. Houston has not shown that he was deprived of a substantial defense that might have made a difference in the trial's outcome.

In the last issue in his supplemental brief, Houston argues that defense counsel was ineffective by not properly preparing for trial and by failing to investigate the prosecution's witnesses. Although the trial court conducted an evidentiary hearing on Houston's ineffective assistance of counsel claims, Houston did not raise this issue at that hearing. Therefore, "our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). In support of this claim, Houston appears to cite a transcript from a 2009 trial in another case with a different defense attorney. Houston fails to explain how this evidence supports his claim. A defendant must establish factual support for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because it is not apparent from the record that defense counsel was unprepared for trial or failed to investigate witnesses, and because Houston has not otherwise established any factual support for this claim, we reject this claim of error.

### III. PROSECUTORIAL MISCONDUCT

Houston next argues that he was denied a fair trial by the prosecutor's conduct in (1) vouching for Shaffer's credibility, (2) injecting inadmissible evidence of Houston's prior criminal history, and (3) improperly denigrating the defense. Although defense counsel objected to the second claimed error, there was no objection to the first or third claims, leaving those claims unpreserved. Houston also argues that defense counsel was ineffective for failing to object to the first and third claims. We review a preserved claim of prosecutorial misconduct de novo to determine if the prosecutor's conduct denied the defendant a fair trial. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). We review an unpreserved claim of prosecutorial misconduct for plain error affecting substantial rights. *Id.* at 274. An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). This Court will not reverse if the prejudicial effect of an improper comment could have been cured by a timely instruction from the trial court. *People v Williams*, 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006). The trial court also considered these claims at the postjudgment evidentiary hearing and denied Houston's motion for a new trial on the basis of the prosecutor's conduct. A trial court's decision denying a motion for a new trial is reviewed for an abuse of discretion. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

We review claims of prosecutorial misconduct case by case, reading the challenged comments in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The prosecution has great latitude during closing argument. The prosecution is permitted to argue the evidence and reasonable inferences arising from the evidence in support of the prosecution's theory of the case. *Id.* at 284. Moreover, opposing counsel is not required to make a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Houston argues that the prosecutor improperly vouched for Shaffer's credibility when she told the jury that "he told you the truth." It is improper for a prosecutor to vouch for the credibility of a witness by suggesting that she has some special knowledge about the witness's truthfulness. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). However, a prosecutor is free to argue from the facts and testimony that the jury should credit the witness's testimony. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). The "mere statement of the prosecutor's belief in the honesty of the complainant's testimony did not constitute error requiring reversal because, as a whole, the remarks were fair." *McElhaney*, 215 Mich App at 284. In addition, "a prompt admonishment to the jury regarding its role as factfinder would have cured any error." *Id.*

In this case, the prosecutor's comments were not improper, and any objection would have been futile, because the prosecutor was simply commenting on the evidence to advance her argument that Shaffer's testimony should be deemed credible and accepted by the jury. The prosecutor confined her remarks to the evidence and reasonable inferences that could be drawn from it. The prosecutor did not suggest that she had special knowledge, unknown to the jury, about Shaffer's truthfulness. Therefore, the prosecutor's arguments were not improper. Further, any objection would have been futile, so defense counsel was not ineffective for failing to object.

Next, Houston argues that the prosecutor improperly commented on Houston's prior criminal history during her rebuttal argument, even though it was not a matter of evidence and was inadmissible. We disagree. Earlier, in defense counsel's closing argument, counsel

-4-

emphasized that there was no evidence that Houston has "ever been a bad actor in his life." Counsel emphasized that only Shaffer's allegations painted Houston as a "bad actor." In her rebuttal argument, the prosecutor first stated that she was responding to defense counsel's argument that Houston was not a bad guy when evidence of past criminal conduct is not admissible to prove guilt in the instant matter. She added that defense counsel would have vehemently objected if she had attempted to introduce such evidence and stated that an attempt to do so would have been unethical. Houston later moved for a mistrial on the basis of these remarks. The trial court denied the motion.

Considering the responsive nature of the prosecutor's remarks, we disagree with Houston's argument that the remarks were improper. Defense counsel brought up Houston's past history first. A "prosecutor's comments must be considered in light of defense counsel's comments." *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001). If the prosecutor is responding to an argument made by defense counsel, a comment that may not have otherwise been proper may not constitute error requiring reversal. *Id*. at 593. In this case, defense counsel's comments suggested that the jury's determination of Houston's guilt or innocence should be influenced by the lack of evidence that Houston had a history as a "bad actor." In responding to defense counsel's comments, the prosecutor did not identify any such evidence or state that such evidence actually existed, but instead clarified that such evidence was not admissible, whether or not it did exist. The prosecutor explained that the reason for this rule is that a jury cannot convict someone because of what they did in the past but must consider only the acts that led to the charges at issue. Contrary to what Houston argues, the prosecutor never stated that Houston had a prior conviction. The prosecutor's remarks were a reasonable response to defense counsel's remarks. They were intended to dissipate the effect of defense counsel's emphasis on the lack of evidence of Houston's prior criminal history and to focus the jury's attention instead on Houston's conduct during the charged offense. Therefore, Houston has not shown that the prosecutor's remarks were improper.

In his third claim of misconduct, Houston argues that the prosecutor improperly denigrated the defense by starting her closing argument by describing the defense's tactics as red herrings to distract from the facts and the law that did not favor the defense. When the prosecutor's use of the term " 'red herring' was not improper denigration of defense counsel, but rather a fair argument regarding what the jury should believe[,]" the prosecutor has not made improper arguments. *People v Blevins*, 314 Mich App 339, 356; 886 NW2d 456 (2016). Likewise, in this case, the prosecutor's comments did not involve a personal attack on defense counsel. Instead, they were a fair argument regarding what the jury should believe and consider in deciding Houston's guilt or innocence. Accordingly, Houston has not shown that the prosecutor's brief remarks were improper or that defense counsel was ineffective for failing to make a futile objection. In sum, we conclude that the trial court did not abuse its discretion in denying Houston's motion for a new trial.

IV. SENTENCING GUIDELINES

Houston argues that he is entitled to be resentenced because the trial court erred in scoring the sentencing guidelines. He challenges the trial court's assessment of 50 points for offense variable (OV) 6 and 15 points for OV 10. When reviewing a challenge to the scoring of the sentencing guidelines, this Court reviews the trial court's factual determinations, which must

be supported by a preponderance of the evidence, for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

Houston argues that the trial court erred by increasing the score for OV 6 from 25 to 50 points. MCL 777.36 provides, in relevant part:

(1) Offense variable 6 is the offender's intent to kill or injure another individual. Score offense variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender had premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50 points

(b) The offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result . . . . . . . . . . . . . . 25 points

\* \* \*

When scoring OV 6, the "sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

Houston argues that the trial court erred as a matter of law in assessing 50 points for OV 6 because the trial court's scoring of OV 6 was not consistent with the jury's verdict, MCL 777.36(2)(a), and because a premeditated intent to kill is not an element of assault with intent to commit murder, *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005). We disagree. The jury made no finding regarding premeditation because premeditation is not an element of assault with intent to commit murder. However, the fact that the jury made no such finding does not establish that evidence of premeditation was lacking or that an assessment of points based on a finding of premeditation is inconsistent with the jury's verdict. The evidence showed that Houston was lying in wait for Shaffer to leave the store and then ambushed Shaffer by approaching him from behind and shooting him multiple times. The jury found that Houston intended to kill Shaffer when he shot him. Given these facts, the trial court did not err in finding that a preponderance of the evidence showed that Houston acted with a premeditated intent to kill, and the trial court did not err by assessing 50 points for OV 6.

Houston also argues that the trial court erred by assessing 15 points for OV 10 for engaging in predatory conduct to exploit a vulnerable victim. MCL 777.40(1)(a) provides that 15 points are to be scored for exploitation of a vulnerable victim if predatory conduct was involved. "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the

primary purpose of victimization." MCL 777.40(3)(a). Predatory conduct "must have occurred before the commission of the offense." *People v Cannon*, 481 Mich 152, 160; 749 NW2d 257 (2008). In *Cannon*, the Supreme Court held that the following three questions must be answered in the affirmative before OV 10 may be scored at 15 points:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*Id.* at 162.]

Predatory conduct does not involve "run-of-the-mill planning to effect a crime or subsequent escape without detection." *Id*. Predatory conduct need not be directed at a particular "victim," but can extend to conduct directed at "a victim," for instance, by a defendant lying in wait or stalking members of the community at large. *People v Huston*, 489 Mich 451, 459-462; 802 NW2d 261 (2011).

The evidence in this case showed that Houston waited outside the store for Shaffer to leave and then ambushed the unsuspecting Shaffer after Shaffer left the store. This conduct was predatory in nature and satisfies the standards for scoring OV 10 at 15 points. Specifically, the evidence showed that Houston engaged in conduct before the shooting by positioning himself outside the store at a location where he could ambush or surprise Shaffer. It was further apparent that Houston's conduct was directed toward a specific victim, Shaffer, who was vulnerable because it was late at night and Shaffer was unable to see Houston because his back was turned toward Houston. Finally, the evidence showed that Houston's primary purpose of lying in wait was to ambush or surprise Shaffer in order to assault him. Houston's conduct went beyond merely planning to commit the offense and escape from the scene undetected. Therefore, the trial court did not err in assessing 15 points for OV 10.

## V. JUDICIAL IMPARTIALITY

Houston argues that the trial judge pierced the veil of judicial impartiality and eviscerated his presumption of innocence by referring to Shaffer as a "victim." Houston identifies only one instance in which the trial court made such a reference, which occurred during an exchange with the attorneys on the record outside the presence of the jury. Because there was no objection to the trial court's remark, this issue is unpreserved, and we review it for plain error affecting defendant's substantial rights. *Jackson*, 292 Mich App at 597.

A criminal defendant is entitled to a trial before a neutral judge, and a "defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *Jackson*, 292 Mich App at 597-598 (citation and quotation marks omitted). "Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Jackson*, 292 Mich App at 598 (citation and quotation marks omitted).

A trial judge engages in misconduct when the judge pierces the veil of judicial impartiality "and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). This analysis is fact-specific, and the pivotal inquiry is "whether the judge's conduct was sufficiently severe and clear so as to create the appearance of bias against the aggrieved party." *Id*. at 171, 171 n 3. A reviewing court should evaluate the following nonexhaustive list of factors in evaluating "the totality of the circumstances[:]"

> the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id.* at 172.]

In this case, the parties were discussing the jury's note asking to rehear testimony, outside the jury's presence. The trial court stated that the jury might be able to rehear some testimony, depending on which witness's testimony they wanted to rehear and asking if it was the testimony of "the victim[.]" The trial court later instructed the jury on its request to rehear testimony and did not use the term "victim." Houston argues that it was improper for the trial court to refer to Shaffer as a "victim." As our Supreme Court has observed, the term "victim" only affords legal status after a defendant has been convicted. See *People v Stanaway*, 446 Mich 643, 678 n 37; 521 NW2d 557 (1994). However, we find no merit to Houston's argument that the trial court's isolated use of the term pierced the veil of judicial impartiality or showed that the court was biased against him.

Houston identifies only a single use of the term "victim," which was made outside the presence of the jury. Clearly, this isolated use of the term could not have influenced the jury and pierced the veil of judicial impartiality because it was not made in the jury's presence. Accordingly, Houston has not established a plain error or shown that the trial court's remark affected his substantial rights. Further, the trial court's isolated use of the generic term "victim" while discussing the jury's request to rehear testimony, made outside the jury's presence and not within the context of presenting evidence to determine Houston's guilt or innocence, does not show deep-seated favoritism or antagonism that would make fair judgment impossible. Accordingly, Houston has not overcome the heavy presumption of judicial impartiality.

## VI. UNSWORN WITNESS

Houston next argues that the trial court became an unsworn witness for the prosecution when it confirmed Shaffer's identification of Houston as the shooter. We find no merit to this argument. Because Houston did not object to the trial court's conduct, this issue is unpreserved, and our review is limited to plain error affecting Houston's substantial rights. See *Jackson*, 292 Mich App at 597. "A judge who comments on the evidence must take great pains to assure that his comments accurately represent the subject." *People v Jones*, 130 Mich App 676, 678; 344 NW2d 46 (1983).

In this case, the trial court's one-word response to Shaffer's identification of Houston did not evince the trial court's personal opinion regarding the identity of the shooter. After Shaffer testified that he was shot multiple times, he identified the shooter in court by naming him and describing what he was wearing. The prosecution stated that the record should reflect that Schaffer identified Houston, and the trial court responded, "[n]oted." The trail court merely clarified, for the record, that the *witness* had identified Houston as the shooter. The trial court did not offer its own opinion of, or comment on, the accuracy or credibility of the witness's identification, nor did it in any way suggest that it was endorsing or supporting the witness's identification of Houston. Houston has not established any error, plain or otherwise.

We affirm.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Peter D. O'Connell